**UNITED STATES DISTRICT COURT
MIDDLE DISTICT OF FLORIDA
ORLANDO DIVISION**

**LADIPO CHAD BETHEA,**

        **Petitioner,**

v.                                         Case No:  6:15-cv-228-Orl-37GJK

**SECRETARY, FLORIDA DEPAR TMENT OF CORRECTIONS and ATTORNEY GENERAL, STATE OF FLORIDA,**

        **Respondents.**

_____/

## ORDER

This cause is before the Court on the Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed by Petitioner pursuant to 28 U.S.C. § 2254.  Respondents filed a Response to Petition ("Response," Doc. 11) in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a Reply (Doc. 18) to the Response.  For the reasons set forth herein, the Petition is denied.

### I.    PROCEDURAL BACKGROUND

A Statewide Grand Jury charged Petitioner and several other individuals by indictment with the commission of various crimes.  (Doc. 12-1 at 4-24).  The Grand Jury charged Petitioner with racketeering (count one), conspiracy to racketeer (count two), conspiracy to traffic in 400 grams of cocaine (count three), and conspiracy to traffic in 25 pounds of cannabis (count four).  (*Id.*).  During trial, the State dismissed count four. (Doc. 12-4 at 342).  A jury found Petitioner guilty as to counts one, two, and three.

(Doc. 12-5 at 235).  However, count two was later dismissed on Double Jeopardy grounds.  (*Id.* at 239-40).  The trial court adjudicated Petitioner guilty of counts one and three and sentenced him to imprisonment for a term of thirty years as to count one and for a term of fifteen years as to count three, with the sentences to run consecutively. (Doc. 12-1 at 26- 30).  Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal ("Fifth District"), which affirmed *per curiam*.  (Doc. 12-7 at 122).

Petitioner then filed a petition for writ of habeas corpus, which the Fifth District denied.  (*Id.* at 126-170, 181).

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which the trial court denied.  (*Id.* at 183-89, 214-17). Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.  (*Id.* at 257).

## II.  LEGAL STANDARDS

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   ANALYSIS

#### A.   Claim One

Petitioner states that trial counsel was ineffective for failing "to advise him to accept a plea offer extended by the State to plead guilty and be sentenced to a total of 12 years of imprisonment . . . ." (Doc. 1 at 7). This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner did not "establish that counsel failed to convey the offer or advised him to reject it . . . ." ("Doc. 12-7 at 217).

Petitioner admitted in his Rule 3.850 motion that counsel "informed him that the state had offered him a twelve (12) year sentence if he would agree to plead guilty to the charges against him." (Doc. 12-7 at 189). According to Petitioner, counsel described the offer as a "good offer." (*Id*). Petitioner never alleged that he was misinformed regarding the possible sentence he faced. (*Id*. at 195-96). Petitioner also stated in the Rule 3.850 motion that "trial counsel at no time advised [Petitioner] whether to accept or reject the state's plea offer." (*Id*. at 189).

5

In the context of a plea bargain, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused[.]" *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Counsel's failure to communicate formal plea offers to a defendant would constitute deficient performance under the first part of the *Strickland* test. *Id*. at 1408. To demonstrate prejudice under the second part of the *Strickland* test when a plea offer has lapsed or been rejected due to counsel's deficient performance, a defendant must show a reasonable probability he or she would have accepted the earlier plea offer had counsel acted reasonably. *Id*. Here, there has been no showing of prejudice.

Given a defendant's awareness of the plea offer, "his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *James v. United States*, 623 F. App'x 973, 975-76 (11th Cir. 2015) (quotation and citation omitted). Petitioner provides no evidence that he expressed a desire to plead guilty prior to his conviction, and, in fact, he maintained his innocence throughout his case. There is no evidence before this Court to show that Petitioner's decision to go to trial or take a plea offer would be different had he received different advice from counsel.

While the plea offer provided for a lower sentence than the one Petitioner received, Petitioner has not established that he would have accepted the plea but for counsel's alleged ineffectiveness, or that the trial court would have accepted it. Petitioner must demonstrate more than the fact that the sentence he received was more than the sentence offered by the plea deal.   Petitioner has also failed to point to any

6

evidence that the trial court would have accepted the plea offer, especially in light of the severity of the sentence actually imposed. Consequently, Petitioner failed to show that counsel was ineffective, and he has not demonstrated a reasonable probability that the result would have been different.

As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, claim one is denied.

### B. Claim Two

Petitioner states that counsel was ineffective for failing to file a pretrial "motion to dismiss the indictment on the ground that the Office of the Statewide Prosecutor lacked jurisdiction to prosecute his case." (Doc. 1 at 17). This claim was raised in Petitioner's Rule 3.850 motion and was denied because there was "no reasonable probability that a pre-trial Motion to Dismiss would have been granted." (Doc. 12-7 at 215.

Under the Florida Constitution, the Office of Statewide Prosecution has the authority to "prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more judicial circuits as provided by general law." *See* Fla. Const. Art. IV, § 4(b). Here, the Indictment specifically provided that "all said offenses occurred in two or more judicial circuits in the State of Florida as part of a related transaction or said offenses were connected with an organized criminal conspiracy affecting two or more judicial circuits in the State of Florida." (Doc. 12-1 at

7

23).  This language has been deemed sufficient to fulfill the jurisdictional requirements for the statewide prosecutor.  *State v. Nuckolls.* 677 So. 2d 12 (Fla. 5th DCA 1996).  Thus, the allegation in the Indictment established the authority of the Office of the Statewide Prosecutor to prosecute the charged offenses.

In addition, each of the four counts of the Indictment specifically stated that Petitioner engaged in the criminal activity "in the Second, Ninth, and Eleventh Judicial Circuits of Florida, to wit:  Gadsen, Leon, Orange, and Miami-Dade Counties."  Thus, the Indictment contained factual allegations to establish that the crimes occurred in two or more judicial circuits.  Consequently, there was no basis upon which to move to dismiss the Indictment prior to trial.

Petitioner has failed to show that counsel was ineffective or that he sustained prejudice with regard to this matter.  As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, claim two is denied.

**C.   Claim Three**

Petitioner states that his right to an impartial jury was violated when a spectator (an individual who had been sitting with the family of the defendants) entered the jury room.  This claim was raised in Petitioner's direct appeal.

In support of this claim, Petitioner relies primarily on *Remmer v. United States*, 347 U.S. 227 (1954).  In *Remmer*, the Supreme Court held that "any private

8

communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ." *Id.* at 229. However, the Supreme Court has also discussed that

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982).

Here, there is no indication that the individual had any private communication with any juror. Each juror was interviewed about the incident, and no juror had any personal interaction with the individual. (Doc. 12-4 at 50-71). One juror mentioned that the individual gave her the "willies," and another juror mentioned feeling "awkward." (*Id.* at 52, 57). However, no juror expressed any concern about the situation, and there is nothing in the record to show that there was any private, extrinsic contact with any juror that would create a presumption of prejudice under the dictates of *Remmer*.

Further, the trial court conducted a thorough *voir dire* of the jurors and took precautionary measures. No juror expressed any concern about continuing with the trial, and no juror stated that his or her impartiality would be affected by the incident. The *voir dire* demonstrated that no prejudice resulted from the incident.


Petitioner's right to a fair trial was fully protected, and the trial court properly denied his motion for a mistrial. There was also no basis for the trial court to excuse any of the jurors. Consequently, the state court properly denied this claim.

As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, claim three is denied.

Allegations not specifically addressed herein are without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

## V. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. This case is **DISMISSED with prejudice**.

3. Petitioner is **DENIED** a certificate of appealability in this case.

4. The Clerk of the Court is directed to enter judgment in favor of Respondents and to close this case.

**DONE** and **ORDERED** in Orlando, Florida on June 15th, 2016.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
OrlP-2 6/15